PONTIUS, SUPT. OF BANKS, v. INGLIS ET AL.

*State banking code—Use of words "investment bankers" prohibited, when—Section 710-3, General Code—"Designation" construed—Constitutional law.*

1. The use of the words "investment bankers" in juxtaposition with the name of a firm, association or corporation is within the inhibition of Section 710-3, General Code.

2. The word "designation" as used in that section is not limited to the name or title under which the business of the firm, association or corporation is conducted.

3. Section 710-3, General Code, regulating the use of the terms "bank," "banker," etc., is a valid and constitutional exercise of the police power of the state.

(Decided June 18, 1920.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. John G. Price; Mr. P. A. White* and *Mr. A. O. Dickey,* for plaintiff in error.

*Messrs. Bulkley, Hauxhurst, Saeger & Jamison* and *Mr. T. H. Bushnell,* for defendants in error.

VICKERY, J. This cause comes into this court on error to the common pleas court of Cuyahoga county. In that court Richard Inglis, as a member of the partnership of Otis & Company, brought suit against Otis & Company, his copartners, and Ira R. Pontius, the state superintendent of banks, complaining in his petition that the defendants Otis & Company and the superintendent of banks in conformance with the provisions of Sections 710-2 and 710-3, General Code, would put an end to the use of the term "investment bankers," which the firm of Otis & Company had been using in connection with its business and its

banking house for many years.   The petition set up that Otis & Company and its predecessor firms had operated an "investment banking business" for twenty-five years, that the principal offices are in Cleveland, with branch offices throughout the various parts of the state, and perhaps in other states in the United States, that it had spent half a million dollars in advertising as "investment bankers," which would be lost if it was compelled to discontinue the use of the term "investment bankers," and that if it was compelled to discontinue the use of the term it could not compete with deposit bankers who had investment departments connected with their institutions. The petition ended with a prayer that the partnership be enjoined from removing the term "investment bankers" from the advertising of Otis & Company and the state superintendent of banks from attempting to enforce the penalties provided for by the statutes referred to.

To this petition the superintendent of banks filed a demurrer, which demurrer was overruled. He then filed an answer admitting that Otis & Company had spent large sums of money in advertising as investment bankers, denied for want of information that the sum amounted to half a million dollars, and alleged for his second defense that the partnership does not have printed on all its advertising matter and business stationery the word "unincorporated," immediately following its name or business title, and for his third defense that it has been making investments forbidden by provisions of the banking act to banks, therein defined.  The second and third defenses were not argued before us, nor the effect of them, therefore we refrain from passing on either of them.

To this answer a demurrer was filed, upon which judgment was entered in favor of the plaintiff below against the defendants, and they were enjoined from enforcing the provisions of Section 710-3, General Code, and it is to reverse the judgment thus rendered that petition in error is filed in this court.

The contentions raised in this court are two which were raised by the plaintiff in his petition in the court below.

It is conceded that Otis & Company are not bankers, as defined in Section 710-2, General Code, and it is claimed that the words "investment bankers" as used by Otis & Company in its advertisements do not come within the inhibition of Section 710-3, General Code. That section is as follows:

"The use of the word 'bank,' 'banker' or 'banking,' or 'trust' or words of similar meaning in any foreign language, as a designation or name, or part of a designation or name, under which business is or may be conducted in this state, is restricted to banks as defined in the preceding section. All other persons, firms or corporations are prohibited from soliciting, accepting or receiving deposits, as defined in section 2 of this act and from using the word 'bank,' 'banker,' 'banking,' or 'trust,' or words of similar meaning in any foreign language, as a designation or name, or part of a designation or name, under which business may be conducted in this state. Any violation of this prohibition, after the day when this act becomes effective, shall subject the party chargeable therewith, to a penalty of $100.00 for each day during which it is committed or repeated. Such penalty shall be recovered by the superintendent of banks by an action instituted for that purpose, and in addition to said penalty, such violation may be

enjoined and the injunction enforced as in other cases.''

Now it will be noted that in order to bring Otis & Company within the provisions of this section the word ''banker'' or ''bank'' must be used either as a designation or a name, or part of a designation or part of a name, under which its business is conducted or transacted in this state; and the further contention is that if it does come within the prohibition of this Section 710-3 the section itself is unconstitutional and therefore void.

It has been conceded in this case by counsel for the defendants in error that ''investment bankers'' were words used in the conduct of their business, but it is claimed that these words were not a part of the designation or name of the company, and, although it is used upon stationery and in advertising, we assume that it is admitted.

What is meant by the phrase, ''under which business is or may be conducted in this state,'' appearing in the first paragraph of Section 710-3? It is contended by the plaintiff below and the defendants in error here that ''investment bankers'' is merely a descriptive term, and not a part of a designation or name, which, if true, is not prohibited by the statute. Did the legislature mean to use the word ''name'' as synonymous with ''designation,'' or ''designation'' as synonymous with ''name?'' The argument is that it did, that there were two ways, that ''name'' and ''designation'' are the two ways of putting it, both meaning the same thing. We must, in construing this statute, have in mind what the purpose of the legislature was in enacting the legislation. Undoubtedly the banking department of the state

thought that the name "banker" or "bank" should not be used indiscriminately, and that whoever did so use the name should be put under the supervision of the state banking department, subject to inspection, etc. Is the expression as used in the act broad enough to include such investment banking companies as Otis & Company? The term "investment bankers" indicates a well-established, well-defined system of banking, and I believe it is conceded that Otis & Company are not deposit bankers, but do merely a broker's business. Indeed, some of the advertisements of Otis & Company show that they are members of the New York stock exchange, and perhaps other stock exchanges; and sometimes in their advertisements the words "Otis & Company" are followed by the words "members of the New York stock exchange," followed by the words "investment bankers," and some times the words "Otis & Company" appear followed by the words "investment bankers," and it is argued that the juxtaposition of these words makes them a part of the name or designation. Now, are the name and designation the same thing? We designate a man by calling him by a name. It is a method we use to point out an individual; it is not the individual himself. Now let me use the words "Otis & Company, Investment Bankers." Isn't the term "investment bankers" the designation of Otis & Company? Doesn't it designate the kind and character of business that the firm Otis & Company is engaged in? Doesn't it differentiate, point out, the particular Otis & Company we have in mind? The meaning of "designation" as found in the dictionary includes "appellation." It, according to Webster, is that which designates distinctive title;

appellation. According to Webster, its meaning is "that which *distinguishes.*" Applying that definition as found in Webster, how are the words "investment bankers" used in connection with Otis & Company? Don't they serve to distinguish and point out the kind of business that Otis & Company is engaged in? You will notice in the statute Section 710-3, that the use of the word "bank," "banker" or "banking," or "trust" or words of similar meaning in any foreign language, as a designation or name, or part of a designation or name, under which business is or may be conducted in this state, is restricted to banks as defined in the preceding section, Section 710-2. Now, if Webster's definition is right as to what designation means, isn't that one of the things that the legislature was seeking to prevent by this very section of the statute; anything which will point out and designate a partnership, a corporation or an individual "as a banker," by use of the term either in the name or as a phrase to designate the character of the business connected with the name? It seems to be conclusive that the legislature intended to prevent the use of the word "banking," or "bank," or "banker," in close juxtaposition to a name, in such way as to designate and serve to distinguish the man's or the partnership's or the corporation's name to which it is in close juxtaposition; that the term is not merely a descriptive term, but is a part of the designation of the business. We are not prepared to say that the legislature intended to apply this law to investment bankers such as Otis & Company, and they may have made the law too broad, and perhaps the law should be amended so as

to exclude investment bankers from its enforcement, but we apprehend that that is a matter for the legis-lature and not for the courts to remedy.

That the firm of Otis & Company is responsible in every way, no one would for the moment question, but if responsible firms can use a name like that, if *they* may use "investment bankers" after a name, as a descriptive term, so may an *irresponsible per-son,* and the evil the legislature sought to cure would still exist.

Again, to show that designation and name are not used in opposition or contrast, I want to call atten-tion to Section 8099, General Code, which provides that every partnership doing business under a ficti-tious name or designation, and not showing the names of partners, shall file and publish a certificate showing the full names and residences of its mem-bers.

In the case of *Pendleton* v. *Cline,* 85 Cal., 142, 24 Pac. Rep., 659, the court held, under a statute of the same character, that "designation" was not used in opposition or contrast with the phrase "fictitious name;" the former was supplementary to the latter.

Now, applying that doctrine to the case at bar, the words "name" and "designation" are simply sup-plementary one of the other, and in the expression "Otis & Company, Investment Bankers," one is the name and the other the designation, and if the name "banker" or "banking" appears in either, then the term falls within the inhibition of the statute and the use of it would subject the user to the penalties pro-vided for in the statute.

We think the legislature in using both "name" and "designation" had this very thing in mind, and an

opinion furnished the banking department in the annual report of the attorney general for 1914, Vol. I, page 192, when Timothy S. Hogan was attorney general, in the *Munn Bank case,* contains the following at page 195:

"With respect to the particular bank here in question it is clear that the present use of the word 'bank' as effectually indicates and advertises the fact that banking is the business carried on as if the name 'Munn Bank' alone were used. In other words, the present use of the word 'bank,' in the manner and connection before noted, within the spirit of the statute at least brings this bank within the provisions of the act."

The words which attorney general Hogan had under construction were "C. G. Munn & Co.," followed by "Successors to Munn Bank," and he held that this language was a designation or name under which the business was conducted so as to render the institution subject to inspection of the banking department of the state of Ohio.

Again, in *Gease* v. *Carlisle,* 15 O. D., N. P., 435, at page 438, the court says:

"It is the duty of a court where different words are used in the statute, to give to each word a separate meaning, if consistent with the fair interpretation of that statute."

So, in the case at bar, when the legislature employed the word "designation," it meant not only the name but any other word which should be used to convey the impression that the concern was a bank. Nobody can pick up the advertisement of Otis & Company, followed by the words "Investment Bankers," without being immediately impressed with the

thought that here is a bank, and one's attention is immediately directed to the strength and force of the advertisement by reason of the fact that it is a bank that is doing the business, and to those who are unable to distinguish between an investment bank and a deposit bank it will immediately appear that the institution is sound and reliable because it is doing business under and by virtue of the authority of the banking act of Ohio and under supervision and control of the state banking department; and, as I have already said, although in the case at bar the firm of Otis & Company is responsible, and no harm could come of it, yet if it is permitted to use the term in that way other investment brokers without the financial responsibility of Otis & Company may likewise use the term "investment banker" and thus defeat the very end and aim of the legislature in passing the legislation.

Nor will it answer the question to say that they may in their letters say that they are investment bankers, nor will it do to say that they may advertise that they are investment bankers, because it is perfectly conceivable that they could do both and the juxtaposition of the words Otis & Company and investment bankers not appear, and therefore there would be no violation of the statute. We think the words "Otis & Company, Investment Bankers," in the position they are used in the advertisement that has been shown us, and in some of the exhibits in this case, are within the prohibition of Section 710-3, they being as used in that way a part of the designation by which the firm of Otis & Company is known.

Passing to the second proposition, that the law is unconstitutional. If we understand the court's

power in construing statutes, it is that the statute must be clearly and unequivocally contrary to the constitution of the state or the United States before a court will be warranted in interfering on that ground and declaring the statute void because unconstitutional. We think it is clearly within the police power of the state to pass this kind of legislation, and that legislatures have passed laws like this in most of the states, and, so far as we know, they have always been held to be constitutional. However wise or unwise the legislation may be, if it is within the powers of the legislature, and not prohibited by the Constitutions of Ohio or the United States, then it is the business of the legislature and not of the courts.

We come now to the proper decision of this case. From the view we take of it, the plaintiff did not state a cause of action, and therefore the demurrer to the petition should have been sustained. An exception was taken to that and the right to prosecute error was reserved on that question and brought into this case in the record. It is true that the defendant below, the superintendent of banks, filed an answer, which was demurred to, and that that demurrer was sustained, and that the judgment entered upon that demurrer was the immediate occasion of the bringing of the action into this court; but if the case were here on appeal and we were hearing it *de novo* on demurrer to the answer filed, if we understand the rules of pleading, the demurrer searches the record and the whole case is to be reviewed by the court and judgment given where the first mistake was made, and even though it were on appeal and the demurrer was to the defendant's answer we could overrule that demurrer and sustain the demurrer to the

plaintiff's petition, and so, however it is looked at, the judgment of the court below should be reversed both for error in overruling the demurrer to the petition and in sustaining the demurrer to the answer.

*Judgment reversed.*

MIDDLETON, J. (of the Fourth Appellate District, sitting in place of WASHBURN, J.), concurs.

DUNLAP, P. J., dissents.